UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| YVONNE L DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:24-cv-01918-JRS-MJD |
| | ) |
| MARION COUNTY SUPERIOR COURT | ) |
| JUVENILE DETENTION CENTER, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON MOTION TO COMPEL**

This matter is before the Court on Defendants' Motion to Compel. [Dkt. 61.] For the reasons and to the extent set forth below, the motion is **GRANTED**.

**I.  Background**

Plaintiff Yvonne Davis was a long-time employee of Defendant Marion County Superior Court Juvenile Detention Center ("JDC").  Her last position was Director of Staff and Youth Services.  In September 2022, Davis reported to her supervisor that another JDC employee had reported to Davis that she had seen two JDC administrators, Kelvin Burrell and Defendant Mary Dozier, together at a casino.  Shortly thereafter, Davis's employment was terminated.  In 2023, Davis filed suit against three JDC employees, alleging that they had terminated her employment in retaliation for the report she had made about the casino sighting.  (That lawsuit will hereinafter be referred to as "Davis I.")  She alleged that her termination violated the United States Constitution and state law.  In July 2025, Davis I was concluded when the court granted summary judgment in favor of the defendants to Davis's federal claims and relinquished jurisdiction over Davis's state law claims.

In October 2024, while Davis I was still pending, Davis filed this case. She alleges that she applied for her old position, Director of Staff and Youth Services, in July 2023 and that she was not hired for the position in retaliation for filing Davis I and because of her gender.

## II. Discussion

Defendants move to compel Plaintiff to give full responses to several discovery requests. The parties' arguments are addressed, in turn, below.

### A. Preliminary Matters

Plaintiff argues that Defendants failed to comply with their meet-and-confer requirements in two respects. First, Plaintiff argues that by failing to "compromise"—by which Plaintiff means concede to Plaintiff's position regarding the relevant timeframe for discovery—Defendants failed to confer in good faith. That argument is without merit. Plaintiff also points out that "Defendants' motion provides dates and general attempts but does not name who participated in the conversations or conferences regarding these issues, as required" by Local Rule 37-1. Defendants substantially complied with the rule, and Plaintiff does not suggest that their lack of technical compliance has prejudiced her in any way.

Plaintiff also suggests that the fact that Defendants did not file their exhibits to their motion to compel "independently supports denial" of the motion. [Dkt. 63 at 5.] Defendants omitted the exhibits when they filed the motion and submitted them at 10:13 a.m. the following morning. Perhaps Defendants should have sought leave to file the belated exhibits; had they done so, leave would certainly have been granted. Mistakes happen. In fact, Plaintiff's counsel made a mistake when quoting *Yancick v. Hanna Steel Corp.*, 157 F. App'x 988, 991 (7th Cir. 2005), in support of his argument. The proper citation for that case, which does, in fact, contain

the language quoted by Plaintiff, is *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 537 (7th Cir. 2011).

### B. Proper Time Frame for Discovery

At issue in all but one of the requests at issue (Document Request No. 4) is Defendants' request for information relating to the time between when Plaintiff was terminated (September 2022) and the time she reapplied for her position (July 2023). Those requests and Plaintiff's responses read as follow:

> **INTERROGATORY NO. 1**: For the post-termination period, explain what efforts you made to seek gainful employment, including how you looked for job openings and any networking or outreach to former colleagues or professional acquaintances in furtherance of your search.
>
> **ANSWER:** Objection. This interrogatory seeks information not related to the claims or defenses of this litigation. This Interrogatory seeks information related to *Davis v. Bova, et al.*, Case No. 1:23-cv-00172-RLY-TAB (Davis 1). Discovery in the Davis 1 matter closed on February 24, 2025. Without waiving her objection, Plaintiff answers: I responded to a July 2023 JDC job announcement for the DSYS position by submitting her application.
>
> **INTERROGATORY NO. 3:** For the post-termination period, identify any friends, family members, acquaintances, former colleagues, professional contacts, prospective employers, or other persons who you have told about your involuntary termination from the JDC in September 2022. You do not need to identify your attorneys, their staff, or Defendants' attorneys in this lawsuit or the first lawsuit.
>
> **ANSWER:** Objection. This interrogatory seeks information not related to the claims or defenses of this litigation. This Interrogatory seeks information related to *Davis v. Bova, et al.*, Case No. l:23-cv-00172-RLY-TAB (Davis 1). Discovery the Davis 1 matter closed on February 24, 2025. Without waiving her objection, Plaintiff answers: During the relevant period of October 2023 to present, I discussed my wrongful termination with family members.
>
> **INTERROGATORY NO. 4:** For the post-termination period, identify any friends, family members, acquaintances, former colleagues, professional contacts, prospective employers, or other persons who you have told about the first lawsuit. You do not need to identify your attorneys, their staff, or Defendants' attorneys in this lawsuit or the first lawsuit.

3

**ANSWER:** Objection. This interrogatory seeks information not related to the claims or defenses of this litigation. This Interrogatory seeks information related to *Davis v. Bova, et al.*, Case No. l:23-cv-00172-RLY-TAB (Davis 1). Discovery in the Davis 1 matter closed on February 24, 2025. Without waiving her objection, please see Plaintiff's Answer to Interrogatory No. 3.

**REQUEST NO. 1**: For Plaintiff's post-termination period, provide copies of any and all communications, including text messages, emails, or other text-based forms of communication, related to Plaintiff's termination, previous employment at JDC, and/or her desire to be rehired by the JDC, between Plaintiff and any current or former employees of the JDC. Illustrative Example: An email sent by Yvonne Davis to a former colleague at JDC in July 2023 asking about job openings.

**RESPONSE**: Objection. This Request seeks information not related to the claims or defenses of this litigation. This Request is a compound request and seeks information related to *Davis v. Bova, et al.*, Case No. 1:23-cv-00172-RLY-TAB (Davis 1). Discovery in the Davis 1 matter closed on February 24, 2025. Without waiving her objection, Plaintiff responds, no documents other than her application for the July 2023 DSYS position, such documents which are already in Defendant's possession.

**REQUEST NO. 2**: For Plaintiff's post-termination period, provide copies of any and all job applications submitted by Plaintiff, including any materials attached to each application, such as cover letters, resumes, letters of recommendation, references, education, professional credentials, and any other document submitted in support of an application for employment, either directly or on the Plaintiff's behalf. Where job applications were submitted by email, please provide copies of the email transmitting the applications to the prospective employers.

**RESPONSE**: Objection. This Request seeks information not related to the claims or defenses of this litigation. This Requests seeks information related to *Davis v. Bova, et al.*, Case No. 1:23-cv-00172-RLY-TAB (Davis 1). Discovery in the Davis 1 matter closed on February 24, 2025. Without waiving her objection, Plaintiff responds: None.

**REQUEST NO. 5**: For the post-termination period, provide any and all communications from prospective employers who have offered to hire or declined to hire Plaintiff.

**RESPONSE**: Objection. This Request seeks information not related to the claims or defenses of this litigation. This Requests seeks information related to *Davis v. Bova, et al.*, Case No. 1:23-cv-00172-RLY-TAB (Davis 1). Discovery in the Davis 1 matter closed on February 24, 2025. Without waiving her objection, Plaintiff responds, None

> **REQUEST NO. 7**: For the post-termination period after Plaintiff stopped receiving unemployment benefits, provide any and all documents related to Plaintiff's efforts to seek employment not specified in Request No 2, including any personal notes about prospective job openings, email inquiries sent to prospective employers, and email communications seeking information about employers for which Plaintiff was seeking to work.
>
> **RESPONSE**: Objection. This Request seeks information not related to the claims or defenses of this litigation. This Requests seeks information related to *Davis v. Bova, et al.*, Case No. 1:23-cv-00172-RLY-TAB (Davis 1). Discovery in the Davis 1 matter closed on February 24, 2025. Without waiving her objection, Plaintiff responds: None.

To the extent that Plaintiff's repeated objection is a relevancy objection, the Court considers it below. However, it appears to be something else, as in her response to the instant motion, Plaintiff argues that

> [Defendants'] requests unreasonably reach back to Plaintiff's termination in September 2022, a matter that was the subject of a separate and previously litigated case, Davis I (Case No. 1:23-cv-00172-RLYTAB), in which discovery closed and dispositive rulings were issued. Defendants' attempt to revisit and re-litigate those facts under the guise of discovery in this case amounts to an improper "do-over."

[Dkt. 63 at 1.] That argument borders on frivolous. The fact that another case has been litigated between Plaintiff and one of the parties to this case is wholly irrelevant to what discovery may be conducted in this case. Plaintiff argues that "**Defendants** had a full and fair opportunity to obtain discovery for the Davis I claims, and they failed to seek that information before discovery closed on June 25, 2024. They cannot bootstrap Davis I issues into this action." [Dkt. 63 at 3] (emphasis added). But that is simply untrue; Defendant JDC was not a party to Davis I; only Paige Kervan is a defendant in both this case and Davis I. And even if JDC had been a party to Davis I, the objection would still be meritless. Even if both Defendants had been parties to

5

Davis I and had defaulted or conducted no discovery at all in Davis I, they would still be entitled to full discovery in this case.[1]

That said, it appears that Plaintiff has nonetheless fully responded to Interrogatory Number 1 and Requests for Production 2, 5, and 7.  She gives an answer to each of those discovery requests, and that answer is not limited as to time.  However, Plaintiff's brief introduces some ambiguity as to whether her responses were full and complete, as she states that she responded to them "within the scope of this litigation" and contains a trailing sentence:  "The fact that she does not waive her objection as to the relevancy of the time period/scope of the request, does not negate the fact that she has produced her discovery responses in a timely fashion and as thoroughly as the [.]"  [Dkt. 63 at 3, 4.]  Accordingly, to remove any ambiguity, Plaintiff shall certify, in writing, that her response to each of these discovery requests is full and complete and is not temporally limited.

### C. Assertions of Privilege

That leaves Interrogatories Numbers 3 and 4 and Document Request No. 4.  With regard to the interrogatories, Plaintiff argues in her brief that she "properly invoked privilege and privacy protections" because her communications with family members are protected by the spousal communications privilege, the common interest privilege, and a general right to "family privacy."  [Dkt. 63 at 4-5.]  However, Plaintiff did not object to these interrogatories on privilege grounds; her general reference to "any other applicable privilege" is far from sufficient to invoke these privileges as to these interrogatories.  Thus, Plaintiff has waived any applicable privilege. *See, e.g.*, *Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) ("'general

---

[1] Whether information obtained in discovery in this case after discovery closed in Davis I would be available for use in Davis I would be an issue to be litigated in Davis I, not in this case.

6

objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered").

In addition to waiving these privileges by failing to raise them in her discovery responses, Plaintiff also fails to present a properly supported argument with regard to them in her brief. Plaintiff states that "[i]n *Love v. State Bank*, No. 1:23-cv-01725 (S.D. Ind. 2024)[,] the Southern District agreed to quash a subpoena by weighing family privacy against its relevance to establish liability and damages." [Dkt. 63 at 4.] In fact, the motion to quash in *Love* did not involve "family privacy" at all; it involved a non-party subpoena to Plaintiff's current employer. *See Love v. State Bank*, No. 1:23-cv-01725-TWP-MG, 2024 WL 4766810, at *1 (S.D. Ind. Nov. 12, 2024). The other case cited by Plaintiff in support of her "family privacy" issue, *Parents for Priv. v. Barr*, 949 F.3d 1210, 1222 (9th Cir. 2020), also does not involve "family privacy." Rather, that case held that "the Fourteenth Amendment does not provide high school students with a constitutional privacy right not to share restrooms or locker rooms with transgender students whose sex assigned at birth is different than theirs." It is difficult to understand why Plaintiff cited to either of these cases.

It is also difficult to understand why Plaintiff cited to the Indiana code with regard to her spousal privilege argument, as there are no state law claims in this case. To the extent that any such privilege is applicable in this case, it would be a federal common law privilege, which Plaintiff does not even attempt to identify or invoke. "As we have often said, 'it is not this court's responsibility to research and construct the parties' arguments.'" *Draper v. Martin*, 664 F.3d 1110, 1114 (7th Cir. 2011) (quoting *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 631 (7th Cir. 2002)).

Similarly, Plaintiff's entire argument regarding the common-interest privilege is as follows:

> Common-interest privilege: *See In re Sealed Case*, 29 F.3d 715 (D.C. Cir.), and *United States v. LeCroy*, 348 F. Supp. 2d 375, 381 (E.D. Pa. 2004) (cited in 7th Cir.). Joint litigants may share confidential communications when pursuing shared legal goals. In the present instance Plaintiff's sister has her own lawsuit against Defendants for wrongful termination.

[Dkt. 63 at 4.] As the cases cited by Plaintiff indicate, "[t]he common interest privilege protects communications between a lawyer and two or more clients regarding a matter of common interest." *In re Sealed Case*, 29 F.3d 715, 719 (D.C. Cir. 1994). It is, essentially, an exception to the rule that the attorney-client privilege is waived as to a communication that also involved a third party. Again, Plaintiff fails to explain how this privilege would apply to any communications between Plaintiff and her sister simply because the two of them are both suing the same Defendants in separate cases. In any case, the interrogatories do not ask for the content of any communications; it simply asks who Plaintiff told about her termination and Davis I, which Plaintiff is ordered to provide.

### D. Tax Returns

Also at issue is Defendants' Document Request No. 4, which asks for "Plaintiff's income tax returns from 2019 through 2024." Plaintiff's response reads as follows:

> **RESPONSE**: Objection. This Request seeks documents not related to any claim or defense in this litigation, and the term "income tax return" is vague and undefined. Plaintiff further objects because this Request seeks information already in Defendants' possession, including Plaintiff's wage income information for the period 2019 through September 26, 2022, while she was employed at the Juvenile Detention Center. Fed. R. Civ. P. 26 (b)(2)(C)(i) limits or bars Defendants' requests when the requested discovery can be "obtained from some other source that is more convenient, less burdensome, or less expensive." Plaintiff further objects to Defendants' request to the extent that it seeks documents irrelevant to the claims or defenses and which constitutes an invasion of privacy of non-parties.

Plaintiff's brief contains the following argument:

> Defendants' request for income tax return documents for years 2023 and 2024 are wholly irrelevant because Plaintiff has stated that she was not employed in 2023 or 2024 and therefore did not receive any wage income.
>
> Defendants already possess wage information for years they employed her (2019–2022). Moreover, Plaintiff's 2023 and 2024 wage income information, if it exists (which it does not), may be requested through less intrusive means than requesting complete income tax return which would reveal far more information than mere wage income. Only when wage income information cannot be obtained through less intrusive means do income tax returns come into play. *See Berg v. Symons*, 393 F. Supp. 2d 1215 (D. Minn. 2005) ("Tax returns are not discoverable absent compelling need.").

[Dkt. 63 at 3-4.] The cited case does not exist. There is a case with the citation *Berg v. Symons*, 393 F. Supp. 2d 525, 546 (S.D. Tex. 2005); that case does not involve tax returns. The Court's research—albeit not exhaustive—did not locate a case with the precise language quoted by Plaintiff. There are, however, District of Minnesota cases that support the principle that there must be a "compelling need" before tax returns are discoverable. However,

> [a]lthough '[s]ome courts have suggested that there is a heightened showing that must be made before tax returns are discoverable,' such as a compelling need for the information or its unavailability from another source, the Seventh Circuit has declined to adopt such a position. *Jackson v. N'Genuity Enters. Co.*, No. 09 C 6010, 2010 WL 4928912, at *2 (N.D. Ill. 2010) (citing [*Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 75 (7th Cir. 1992)].[2] Tax returns, thus, are subject to the familiar relevance and proportionality analysis under Rule 26(b)(1).

*Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19 C 2436, 2021 WL 4894701, at *2 (N.D. Ill. Oct. 20, 2021) (footnote added). And while "the burden that compelled production of income tax returns may impose on voluntary self-reporting of income under our tax system" may be a

---

[2] The Court notes that what the Seventh Circuit said in *Poulos* was that it "express[ed] no opinion at this time" regarding whether there should be "some sort of presumption against disclosure" of tax returns based on "the need, if the tax laws are to function properly, to encourage taxpayers to file complete and accurate returns." *Poulos*, 959 F.2d at 74-75 (citations omitted).

relevant factor in determining the proportionality of a request for tax returns, *see Johnson v. Soo Line R.R. Co.*, No. 17 C 7828, 2019 WL 4037963, at *3 (N.D. Ill. Aug. 27, 2019), Plaintiff has failed to develop any such argument or cite to any extant legal authority and therefore has waived any such argument. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006)).

Finally, Plaintiff argues (and objected) generally that the information sought by Defendants regarding the period from her termination in September 2022 to her new application in July 2023 is irrelevant to this case. Establishing relevancy in the context of discovery is not a high bar, and "'courts should err on the side of permissive discovery' for close questions of relevance." *Fed. Trade Comm'n v. Deere & Co.*, 2025 WL 1866817, at *1 (N.D. Ill. July 7, 2025) (quoting *Coleman v. Illinois*, No. 19C 3789, 2020 U.S. Dist. LEXIS 177020, at *9 (N.D. Ill. Sep. 25, 2020) (in turn quoting *Wiginton v. CB Richard Ellis, Inc.*, 229 F.R.D. 568, 577 (N.D. Ill. 2004)); *see also Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 2021 WL 3186959, at *3 (S.D. Ill. July 28, 2021) ("relevance must be broadly construed.").

Here, Defendants have put forth several ways in which they argue the information they seek is relevant. One of those reasons is that the information is relevant to the "sincerity" of Plaintiff's attempt to be rehired by JDC. Defendants posit that Plaintiff may have never intended to accept the JDC job she applied to—either because she was physically unable to work or for other reasons—and that she only applied to the job in hopes that it would give her a reason to file suit against JDC. Information related to this theory is at least relevant to damages. Accordingly,

the Court, in its discretion, finds that Defendants have demonstrated the relevance of the information they seek.

### III.  Conclusion

For the reasons set forth above, Defendants' Motion to Compel, [Dkt. 61], is **GRANTED**.  Plaintiff shall respond completely and unequivocally to Defendants' Interrogatories Numbers 1, 3, and 4, and Document Requests Numbers 1, 2, 4, 5, and 7 **within 14 days of the date of this Order**.  If Plaintiff has already fully responded to any of these requests, she shall unequivocally state that her prior response was complete and unequivocal.

SO ORDERED.

Dated:  6 AUG 2025

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.