UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

YVONNE L DAVIS,                          )
                                         )
                    Plaintiff,           )
                                         )
            v.                           )        No. 1:24-cv-01918-JRS-MJD
                                         )
MARION COUNTY SUPERIOR COURT             )
JUVENILE DETENTION CENTER, et al.,       )
                                         )
                    Defendants.          )

**REPORT AND RECOMMENDATION**

On July 31, 2025, attorney Tae Sture filed a response brief to Defendants' Motion to

Compel.  [Dkt. 61.]  In that brief, Mr. Sture included two citations that he concedes do not exist.

First, the brief contains the following quotation and citation:

> "It is the burden of the party seeking discovery to show that the information sought
> is relevant to the claims or defenses in the case." *Perry v. City of Indianapolis*,
> No. 1:18-cv-02173-JRS-DLP, 2019 WL 2088435, at 2 (S.D. Ind. May 13, 2019).

[Dkt. 61 at 2.]  The citation given is a rather bizarre amalgamation of several cases.  1:18-cv-

2173 is a cause number that exists; however, it does not involve either a party named Perry or the

City of Indianapolis, and it was never assigned to either Judge Sweeney (JRS) or Magistrate

Judge Pryor (DLP).  There have been cases with Perry and the City of Indianapolis as parties, but

none of them have any opinions on Westlaw that relate to discovery.  2019 WL 2088435 is a real

citation, but it is for the case *Rehal v. Weinstein* from the New York Superior Court.  It is, at least,

a decision dated May 13, 2019, but it has nothing to do with the burden in a discovery dispute.

Second, the brief contains the following representation, citation, and quote:

> Only when wage income information cannot be obtained through less intrusive
> means do income tax returns come into play. *See Berg v. Symons*, 393 F. Supp. 2d

1215 (D. Minn. 2005) ("Tax returns are not discoverable absent compelling need.").

[Dkt. 63 at 3-4.]  The cited case does not exist.  There is a case with the citation *Berg v. Symons*, 393 F. Supp. 2d 525, 546 (S.D. Tex. 2005), but that case does not involve tax returns.[1]

On August 11, 2025, the Undersigned issued an Amended Order to Show cause pursuant to Federal Rule of Civil Procedure 11(c)(3), directing Mr. Sture to appear and show cause why he should not be sanctioned for violating Rule 11(b).  [Dkt. 67.]  Mr. Sture appeared at the show cause hearing on August 20, 2025.  The Undersigned now makes the following recommendation.

## I.  Mr. Sture's Representations at the Show Cause Hearing

At the hearing, Mr. Sture acknowledged that he was responsible for the errors in the brief that he signed and filed.  However, he took the position that the main reason for the errors in his brief was the short deadline (three days) he was given to file it.[2]  He explained that, due to the short timeframe and his busy schedule, he asked his paralegal (who once was, but is not currently, a licensed attorney) to draft the brief, and Mr. Sture did not have time to carefully review the paralegal's draft before filing it.

With regard to the short deadline, the Undersigned notes, as he did at the hearing, that the discovery dispute in question was discussed during a status conference on July 9, 2025.  In the minute entry for that conference, the Undersigned set a discovery conference to discuss the

---

[1] There were multiple other mistakes in the citations contained in Mr. Sture's brief.  Those are set out in the Amended Order to Show Cause.  [Dkt. 67.]  As those mistakes could be attributed to simple sloppiness in drafting, as opposed to a failure to comply with the basic obligations of legal counsel, they are not the subject of this sanctions recommendation.

[2] The shortened response deadline was not an arbitrary decision by the Court.  The motion to compel was filed on July 28, 2025.  [Dkt. 61.]  Liability discovery was scheduled to close on September 2, 2025.  [Dkt. 23 at 5.]  The Court thereafter expedited its consideration of the motion and issued its order two days after the reply brief was filed on August 4, 2025.  [Dkts. 64 & 66.]  Even though the Court ruled in less time than Plaintiff's counsel was given to draft the brief, it was able to identify the non-existent citation in Plaintiff's brief during that time.

issues on July 23, 2025, and directed the parties to meet and confer regarding all discovery disputes by July 18, 2025. [Dkt. 58.] Mr. Sture obviously should have had a legal basis for his positions with regard to the discovery disputes prior to taking those positions in his discovery responses, and he certainly should have done any necessary research to ensure that those positions were sound prior to the parties' meet-and-confer, and subsequent conference with the Court. Thus, while Mr. Sture did only have three days to file his response after the motion to compel was filed, he had much more time than that to consider and research the issues that were ultimately addressed in the response brief. Further, while Mr. Sture made much at the hearing about the fact that he filed his response brief literally at the eleventh hour (the brief was, in fact, filed at 11:00 p.m. on the due date), he further represented that he subscribes to LEXIS. It would have taken only a few minutes to check the validity of the citations in the brief using LEXIS before filing it.

Mr. Sture failed to take even that most basic of actions, and therefore did not catch the fact that the brief contained citations that did not exist. The most logical explanation for the citation to non-existent authority is, of course, the use of generative AI to conduct legal research and/or draft the brief. The issue of "hallucinated case[s] created by generative artificial intelligence (AI) tools such as ChatGPT and Google Bard" has been "widely discussed by courts grappling with fictitious legal citations and reported by national news outlets." *See, e.g.*, *United States v. Hayes*, 763 F. Supp. 3d 1054, 1065 (E.D. Cal. 2025). The paralegal who drafted the brief did not appear at the hearing. Mr. Sture represented at the hearing that the paralegal did not use generative AI to aid in the drafting of the brief; rather, she told Mr. Sture that she used a legal research product called Fastcase. However, neither Mr. Sture nor the paralegal provided any alternative explanation for the erroneous citations. Further, whether generative AI was or was

not used to draft the brief is not particularly relevant to the analysis.  There is nothing fundamentally improper in the use of AI tools to draft a brief.  Rather, it is counsel's abdication of his responsibility to ensure that the information he provided to the Court was accurate that is the basis for the sanctions recommended.

## II.  Federal Rule of Civil Procedure 11

Rule 11 provides in relevant part:

> **(b) Representations to the Court.** By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> . . .
>
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b).  A court may, *sua sponte*, order an attorney to show cause why conduct specifically described in the order has not violated Rule 11(b).  Fed. R. Civ. P. 11(c)(3).  If the court then determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on that attorney.  Fed. R. Civ. P. 11(c)(1).  An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.  Fed. R. Civ. P. 11(c)(6).

"The standard for imposing sanctions under Rule 11 is an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Fed'n of State Med. Boards of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987) (collecting cases), *overruled on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989).  One specific inquiry for determining whether sanctions are appropriate is "whether the party or attorney made a reasonable inquiry into the law." *Brown*, 830 F.2d at 1435, *see* Fed. R. Civ. P. 11(b)(2).  Indeed:

> Rule 11 requires counsel to study the law before representing its contents to a federal court.  An empty head but a pure heart is no defense.  The Rule requires counsel to read and consider before litigating.  Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under the Rule.

*Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) (citations omitted).

Courts have consistently held for decades that failing to check the treatment and soundness—let alone the existence—of a cited case warrants sanctions.  *See, e.g.*, *Salahuddin v. Coughlin*, 999 F. Supp. 526, 529 (S.D.N.Y. 1998) (noting that Shepardizing would have led defense counsel to a key case); *Brown v. Lincoln Towing Serv.*, No. 88C0831, 1988 WL 93950 (N.D. Ill. 1988) (imposing sanctions where the attorney filed a claim based on an expired federal statute); *Pravic v. U.S. Indus.-Clearing*, 109 F.R.D. 620, 623 (E.D. Mich. 1986) (holding that the act of relying on another attorney's memorandum without Shepardizing the cases cited warranted sanctions); *Blake v. Nat'l Cas. Co.*, 607 F. Supp. 189, 191 (C.D. Ca. 1984) (noting that Shepardizing cases already cited would have led to controlling authority).

The advent of modern legal research tools implementing features such as Westlaw's KeyCite and Lexis's Shephardization has enabled attorneys to easily fulfill this basic duty, and there is simply no reason for an attorney to fail to do so.  Such has been the view for decades:  "It is really inexcusable for any lawyer to fail, as a matter of routine, to Shepardize all cited cases (a process that has been made much simpler today than it was in the past, given the facility for doing so under Westlaw or LEXIS)."  *Gosnell v. Rentokil, Inc.*, 175 F.R.D. 508, 510 n.1 (N.D. Ill. 1997).  Confirming that a case is good law is a basic, routine matter and something that is expected from a practicing attorney.  As noted in the case of an expert witness, an individual's "citation to fake, AI-generated sources . . . shatters his credibility."  *See Kohls v. Ellison*, 2025

WL 66514, at *4 (D. Minn. Jan. 10, 2025).  The same is true even if the fake citations were generated without the knowing use of AI.

Mr. Sture admits that he did not make the requisite reasonable inquiry into the law before filing his brief.  Whether or not AI was the genesis of the non-existent citations, Mr. Sture's failure to review them before submitting them to the court was a violation of Rule 11.  *See Hayes*, 763 F. Supp. 3d at 1066-67 ("The Court need not make any finding as to whether Mr. Francisco actually used generative AI to draft any portion of his motion and reply, including the fictitious case and quotation. . . .  Citing nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court.  It does not matter if generative AI told you so.") (citations and quotations marks omitted).

The fact that Mr. Sture did not file the brief with the intention of deceiving the court does not excuse his failure to check the citations therein.  *See Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987) ("Good faith is not a defense to the imposition of Rule 11 sanctions.").  Whether a case cite is obtained from a law review article, a hornbook, or through independent legal research, the duty to ensure that any case cited to a court is "good law" is nearly as old as the practice of law.  As previously noted, the development of resources such as the Shephard's citation system provided lawyers a tool to accomplish that most basic of tasks.[3]  It is Mr. Sture's failure to comply with that most basic of requirements that makes his conduct sanctionable.

The Undersigned finds that Mr. Sture violated Rule 11 and that sanctions for that violation are appropriate.  In imposing sanctions, a court must keep in mind the basic principle that "[i]n choosing a sanction . . . 'the least severe sanction [that is] adequate to serve the purpose

---

[3] Frank Shepard introduced his print citation index in the 1870s, though other precursor citation series had existed since the early nineteenth century. *See* Laura C. Dabney, *Citators: Past, Present, and Future*, 27 Legal Reference Servs. Q. 165, 166 (2008).

should be imposed."' *Brown*, 830 F.2d at 1437 (quoting *Cabell v. Petty,* 810 F.2d 463, 466 (4th Cir. 1987) (footnote omitted) (quoting Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look,* 104 F.R.D. 181, 201 (1985))).  One such purpose is to impose costs on the careless or reckless lawyer who unnecessarily burdened opposing counsel or the court.  *See Thornton*, 787 F.2d at 1154.  While compensation is an important consideration in issuing sanctions, "[a]n even more important purpose is deterrence."  *Brown*, 830 F.2d at 1438; *see* Fed. R. Civ. P. 11(c)(4).  Monetary sanctions ranging from $2,000 to $6,000 have been imposed in similar contexts in the past few years.  *See, e.g. Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, 2025 WL 1511211 (S.D. Ind. May 28, 2025) ($6,000 sanction);[4] *Gauthier v. Goodyear Tire & Rubber Co.*, 2024 WL 4882651 (E.D. Tex. Nov. 25, 2024) ($2,000 sanction); *Mortazavi v. Booz Allen Hamilton, Inc.*, 2024 WL 4308032 (C.D. Cal. Sept. 26, 2024) ($2,500 sanction); *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023) ($5,000 sanction).  Given the distressing number of cases calling out similar conduct since the opinions cited above were issued,[5] it is clear that the imposition of modest sanctions has failed to act as a deterrent.

---

[4] The Undersigned recommended a $15,000.00 sanction in that case:  $5,000 for each of three briefs that contained non-existent citations.  The District Judge reduced the sanction to $6,000, taking into account "the steps [the sanctioned attorney] has taken 'to educate himself on the responsible use of AI in legal practice' and adhere to 'the highest standards of professional conduct moving forward.'"  *HoosierVac LLC*, 2025 WL 1511211 at *1.

[5] The Undersigned's very quick, certainly non-exhaustive search revealed at least eleven cases noting fictitious citations (to either non-existent cases or non-existent quotations) in federal court filings in the month of August 2025 alone.  *See In re Richburg*, 2025 WL 2470473 (Bankr. D.S.C. Aug. 27, 2025); *Chenco Engineering & Consulting Gmbh v. Do-Fluoride New Materials Co. Ltd.*, 2025 WL 2430556 (D. Idaho Aug. 22, 2025); *Lahti v. Consensys Software Inc.*, 2025 WL 2404454 (S.D. Ohio Aug. 20, 2025); *In re Derosa-Grund*, 2025 WL 2395095 (Bankr. S.D. Tex. Aug. 18, 2025); *Mavy v. Comm'r of Soc. Sec. Admin.*, 2025 WL 2355222 (D. Ariz. Aug. 14, 2025); *Chavez-DeRemer v. NAB, LLC*, 2025 WL 2308676 (D. Nev. Aug. 11, 2025); *Jackson v. BOK Fin. Corp.*, 2025 WL 2294916 (N.D. Okla. Aug. 8, 2025); *Hall v. Acad. Charter Sch.*, 2025 WL 2256653 (E.D.N.Y. Aug. 7, 2025); *Salem v. Tipton Cnty. Bd. of Educ.*, 2025 WL 2415804 (W.D. Tenn. Aug. 5, 2025), *report and recommendation adopted* 2025 WL 2412653 (W.D. Tenn. Aug. 20, 2025); *Williamson v. Transunion LLC*, 2025 WL 2443063 (M.D. Fla. Aug. 5, 2025);

Accordingly, the Undersigned **RECOMMENDS** that Mr. Sture be sanctioned $7,500.00 for his Rule 11 violations in this case.

### III.  Indiana Rules of Professional Conduct

The District Court for the Southern District of Indiana holds attorneys to the ethical obligations set forth in the Indiana Rules of Professional Conduct.  Local R. 83-5(f).

> When misconduct or allegations of misconduct that, if substantiated, would warrant discipline of an attorney who is a member of the bar of the court or has practiced in the court come to the attention of a judicial officer, including a bankruptcy judge or a magistrate judge, whether by complaint or otherwise, the judicial officer may refer the matter to the Chief Judge.  The Chief Judge may then refer the matter to one or more of the following:
>
> (1) the Indiana Attorney Disciplinary Commission for investigation and prosecution,
>
> (2) another disciplinary authority having jurisdiction over the attorney,
>
> (3) the Department of Justice or other law enforcement agency, or
>
> (4) recruited counsel for investigation and the formulation of a recommendation for further action.

Local R. of Disciplinary Enf't 2(a).  At least three of the Indiana Rules of Professional Conduct are implicated here, and the Undersigned will address them each in turn.

### A. Rule 1.1. Competence

"A lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation."  Ind. R. of Prof. Conduct 1.1.  It is clear that Mr. Sture failed to provide

---

*Johnson v. MidFirst Bank*, 2025 WL 2267987 (E.D. Tex. Aug. 4, 2025); *Advani v. App. Term, 2nd Jud. Dep't*, 2025 WL 2201065 (S.D.N.Y. Aug. 1, 2025).  While most of these cases involved filings by *pro se* litigants, three of them (*Chenco Engineering*, *Mavy*, and *Hall*) involved filings by attorneys.  The fact that there are so many occurrences in such a short period of time, even after multiple orders issuing sanctions in other cases that have received a great deal of attention in the legal press, underscores the need for the continued imposition of sanctions to attempt to deter such behavior in the future.

competent representation when he submitted fabricated legal citations to the court in a brief that he did not draft and had not adequately reviewed. These actions flouted the requisite legal knowledge, skill, preparation, and especially thoroughness reasonably necessary for Mr. Sture's representation of his client.

### B. Rule 3.1. Meritorious Claims and Contentions

"A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Ind. R. of Prof. Conduct 3.1. This Rule mirrors the requirements of Rule 11(b)(2), and likewise proscribes presenting unfounded legal bases. There is no merit in relying on non-existent cases, so Mr. Sture's conduct clearly disregarded this Rule.

### C. Rule 3.3. Candor Toward the Tribunal

"A lawyer shall not knowingly: . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Ind. R. of Prof. Conduct 3.3(a)(1). It is undisputed that Mr. Sture made false statements of law to the court when he relied on two cases that do not exist. Moreover, Mr. Sture did so "knowingly"—he knowingly failed to fulfill his duty to review the brief he filed and verify that the law he presented was good law. As such, the Undersigned believes that discipline for violation of Indiana Rule of Professional Conduct 3.3 is appropriate as well.

### IV. Conclusion

For the reasons set forth above, the Undersigned, in his discretion, hereby **RECOMMENDS** that Mr. Sture be personally **SANCTIONED** in the amount of $7,500.00 pursuant to Federal Rule of Civil Procedure 11 for filing a brief that contained citations to non-

existent cases.  In addition, the Undersigned **REFERS** the matter of Mr. Sture's misconduct in this case to the Chief Judge pursuant to Local Rule of Disciplinary Enforcement 2(a) for consideration of any further discipline that may be appropriate.

Mr. Sture is **ORDERED** to provide a copy of this order to his client, Yvonne Davis, and to file a certification that he has done so within seven days of the date of this order.

Any objections to this Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.


Dated:  2 SEP 2025

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana




Distribution:

Service will be made electronically on all ECF-registered counsel of record via email generated by the court's ECF system

Chief Judge James R. Sweeney, II