**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| YVONNE L. DAVIS<br>     Plaintiff,<br><br>v.<br><br>MARION COUNTY SUPERIOR COURT<br>JUVENILE DETENTION CENTER et al.<br>     Defendants. | No. 1:24-cv-01918-JRS-MJD |
| In re:<br><br>     TAE STURE | No. 1:25-mc-00047-JRS-MG |

**OBJECTIONS TO REPORT AND RECOMMENDATION**

Tae Sture, by counsel and pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), respectfully submits the following objections to the Report and Recommendation [Dkt. 71].

**INTRODUCTION**

Mr. Sture apologizes to the Court for his failure to verify and Shepardize two case citations described in the Magistrate Judge's Report and Recommendation ("Report"). At a hearing before the Magistrate Judge, Mr. Sture "acknowledged that he was responsible for the errors in the brief that he signed and filed." [Report (Dkt. 71 at 1–2)] Mr. Sture takes this matter seriously and has retained counsel to assist him with this matter and any disciplinary matter that could arise out of his failure to verify the citations at issue.

1

Mr. Sture also assures the Court that he will not make the same mistake in the future. This experience has been a humbling learning experience for Mr. Sture and the public nature of the Report has served as a deterrent. Mr. Sture has practiced for more than 20 years, filed numerous pleadings before this Court, and an issue like this one has never arisen in his career. As described below, this situation arose out of a series of events that left Mr. Sture reviewing a brief just before it was due and ultimately filing the brief around 11:00 p.m.—just one hour before the deadline.

Regardless of Mr. Sture's mistakes, Mr. Sture acted hastily and did not act with an intent to deceive nor did he act unethically. Counsel for Mr. Sture respectfully object to the Report's findings that the Indiana Rules of Professional Conduct were violated and requests that this Court review and vacate the Report's findings of a violation of the Rules of Professional Conduct.

Mr. Sture understands that the "fact that Mr. Sture did not file the brief with the intention of deceiving the court does not excuse his failure to check the citations therein." [Report (Dkt. 71 at 6)] However, counsel for Mr. Sture respectfully request that the Court impose no discipline and reduce the recommended monetary sanction to $2,000 or less in light of mitigating factors, including: 1) Mr. Sture's lack of disciplinary history; 2) the fact that Mr. Sture is a solo practitioner who was operating on a compressed deadline; 3) the absence of any intent to deceive; 4) the public nature of this sanction (which has already served as a deterrent for Mr. Sture and will serve as a

2

deterrent for other counsel in the future); 5) prior decisions, including one in this District, sanctioning this type of conduct; and 6) the fact that this matter has already been referred to the Indiana Supreme Court Disciplinary Commission.

### BACKGROUND FACTS

Mr. Sture's normal practice before this Court is to take the lead on drafting and filing pleadings, use LEXIS for legal research, and file a brief only when he is confident that all arguments are supported by current law. However, due to the circumstances that arose in this matter, Mr. Sture was not able to follow his normal practice.

1. **Operating on a compressed 3-day deadline, Mr. Sture delegated a draft to a paralegal and filed the response at the eleventh hour.**

The filing at issue arose in the context of a discovery dispute. Following a status conference held on July 23, 2025, the Magistrate Judge permitted motions to compel to be filed by July 28, 2025. [Dkt. 60] It was further ordered that the normal response deadline found in Local Rule 7-1(c)(3)(A) would be shortened from 14 days to just 3 calendar days. [*Id.*] Therefore, Mr. Sture's response would be due on July 31, 2025.

The Defendants' motion to compel [Dkt. 61] was filed at 11:34 p.m. eastern time on July 28, 2025. A copy of the CM/ECF Notice of Electronic Filing Mr. Sture received is **Exhibit 1**. Mr. Sture reviewed the motion to compel the next morning. However, the Defendants' exhibits were missing. As **Exhibit 2** reflects, the Defendants belatedly filed their "omitted" exhibits on July 29th at 10:13 a.m. eastern time.

During that condensed three-day response period, Mr. Sture also had to prepare for a deposition scheduled for 8:30 a.m. on August 1. Accordingly, Mr. Sture asked for assistance with the response and delegated the drafting to a paralegal. As noted in the Report, Mr. Sture "explained that, due to the short timeframe and his busy schedule, he asked his paralegal (who once was, but is not currently, a licensed attorney) to draft the brief." [Report (Dkt. 71 at 2)] There is nothing unethical or improper about delegating the first draft of a response. In delegating this task, Mr. Sture believed that he would have enough time to review the paralegal's work thoroughly.

However, in hindsight, Mr. Sture did not have enough time to conduct a thorough review of the paralegal's work. Mr. Sture concedes that the drafting of the response was a rushed effort. Mr. Sture reviewed the response prior to filing; however, as the Report correctly notes, he "did not have time to carefully review the paralegal's draft before filing it." [Report (Dkt. 71 at 2) (emphasis added)]

As the Report notes, Mr. Sture "filed his response brief literally at the eleventh hour (the brief was, in fact, filed at 11:00 p.m. on the due date)." [Report (Dkt. 71 at 3)] In addition, "[t]here were multiple other mistakes in the citations contained in Mr. Sture's brief. Those are set out in the Amended Order to Show Cause. [Dkt. 67] As those mistakes could be attributed to simple sloppiness in drafting, as opposed to a failure to comply with the basic obligations of legal counsel, they are not the subject of this sanctions recommendation." [Report (Dkt. 71 at 2, n. 1)]

4

The rushed timeline for the filing and the "sloppiness in drafting" contributed to Mr. Sture "includ[ing] two citations that he concedes do not exist." [*See* Report (Dkt. 71 at 1)]

2. **Despite reviewing the draft before it was filed, Mr. Sture missed the fact that the brief contained two non-existent citations.**

The first statement ("Statement #1") containing a non-existent citation was:

"It is the burden of the party seeking discovery to show that the information sought is relevant to the claims or defenses in the case." *Perry v. City of Indianapolis*, No. 1:18-cv-02173-JRS-DLP, 2019 WL 2088435, at 2 (S.D. Ind. May 13, 2019).

[Report (Dkt. 71 at 1 (citing Dkt. 61 at 2))][1]

The second statement ("Statement #2") containing a non-existent citation was:

Only when wage income information cannot be obtained through less intrusive means do income tax returns come into play. *See Berg v. Symons*, 393 F. Supp. 2d 1215 (D. Minn. 2005) ("Tax returns are not discoverable absent compelling need.").

[Report (Dkt. 71 at 1–2 (citing Dkt. 63 at 3–4)]

Before the Magistrate Judge, Mr. Sture represented what he was told about the mistake: "Mr. Sture represented at the hearing that the paralegal did not use generative AI to aid in the drafting of the brief; rather, she told Mr. Sture that she used a legal research product called Fastcase." [Report (Dkt. 71 at 3) (emphasis added)] Again, while

---

[1] This citation in the Report appears to be a typographical error. The response brief is at Dkt. 63, not Dkt. 61.

Mr. Sture takes responsibility for the mistakes at issue and concedes a more careful review of the pleading prior to filing should have been done, Mr. Sture did not do the legal research himself and has explained what he was told by his paralegal as to why the error was made. As the Report notes, "whether generative AI was or was not used to draft the brief is not particularly relevant to the analysis. There is nothing fundamentally improper in the use of AI tools to draft a brief." [Report (Dkt. 71 at 3–4)] Irrespective of the paralegal's explanation, the errors in the filing occurred because Mr. Sture's review of the brief was not thorough enough to catch them during the one hour before the 11:59 p.m. filing deadline.

3. **There was no intent to deceive, and the legal principles contained in both statements are correct but were incorrectly attributed to non-existent cases.**

Again, Statement #1 is as follows:

> "It is the burden of the party seeking discovery to show that the information sought is relevant to the claims or defenses in the case." *Perry v. City of Indianapolis*, No. 1:18-cv-02173-JRS-DLP, 2019 WL 2088435, at 2 (S.D. Ind. May 13, 2019).

[Report (Dkt. 71 at 1 (citing Dkt. 61 at 2))]

As noted above, Mr. Sture "concedes" that this citation does "not exist." [Report (Dkt. 71 at 1)] Mr. Sture also acknowledges that this statement of the law should not have been attributed to a non-existent case. But the legal principle stated in Statement #1 is correct (perhaps even axiomatic) and is contained in numerous cases from across the country, including from this Court:

- "[T]he burden of demonstrating relevance is on the party seeking discovery . . . ." *Grimes v. Keramida Env't, Inc.*, No. 1:22-cv-01598-JRS-MJD, 2023 WL 5384049, at *2 (S.D. Ind. Aug. 22, 2023).

- "A party seeking discovery bears the initial burden of proving the relevance of the requested information." *Hamill v. Twin Cedars Senior Living, LLC*, No. 3:20-CV-231, 2020 WL 5082570, at *2 (M.D. Pa. Aug. 27, 2020) (citing *Morrison v. Phil. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001)).

- "When the first requirement of relevancy is not apparent, 'it is the burden of the party seeking discovery to show the relevancy of the discovery request.'" *United States v. Lake Cnty. Bd. of Comm'rs*, No. 2:04 cv 415, 2005 WL 8170554, at *1 (N.D. Ind. Nov. 9, 2005) (quoting *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 309 (D. Kan. 1996)).

Statement #2 reads as follows:

Only when wage income information cannot be obtained through less intrusive means do income tax returns come into play. *See Berg v. Symons*, 393 F. Supp. 2d 1215 (D. Minn. 2005) ("Tax returns are not discoverable absent compelling need.").

[Report (Dkt. 71 at 1–2 (citing Dkt. 63 at 3–4)]. Again, Mr. Sture concedes that this citation does not exist, but the legal principle contained in Statement #2 is likewise correct:

- "[F]ederal courts generally resist discovery of tax returns. *See generally Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992); *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975)*. Consistent with this principle, a preponderance of authorities set out a two-part standard for deciding whether tax returns should be disclosed. First, a court examines whether the returns are relevant. If so, then the question becomes whether there is a compelling need for the returns. When looking at whether there is a compelling need, a court examines whether the information in the returns is

7

readily obtainable from another source." *E.E.O.C. v. Ceridian Corp.*, 610 F. Supp. 2d 995, 996–97 (D. Minn. 2008) (collecting cases).[2]

- "In most instances, it has been held that production of a tax return should not be ordered unless there appears to be a compelling need for the information it contains, such as is not otherwise readily obtainable." *Shaver v. Yacht Outward Bound*, 71 F.R.D. 561, 564 (N.D. Ill. 1976) (citing *Copper v. Hallgarten & Co.*, 34 F.R.D. 482, 484 (S.D.N.Y. 1964)), cited in 2 *Discovery Proceedings in Federal Court* § 24:19 & n.91 (3d ed.), Westlaw (database updated May 2025) ("As a general rule, production of a tax return will not be ordered in the absence of a compelling need for the information, such as that it is not otherwise readily obtainable.").

Therefore, Statement #1 and Statement #2 contain accurate statements of law but non-existent citations. Once again, Mr. Sture apologizes for this. However, the fact that Statement #1 and Statement #2 correctly state the law likely contributed to Mr. Sture's inability to be alerted to the error when he reviewed the response late on July 31, 2025. Furthermore, the fact that Statement #1 and Statement #2 correctly state the law demonstrates that Mr. Sture had no intent to deceive the Court and that this is not an instance in which incorrect citations led to misstatements of law or caused the Court or a party to make or rely upon an incorrect pronunciation of the law.

## LEGAL STANDARD

The Court's review of the report and recommendation on sanctions is *de novo*. *See*

*Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996) ("resolution

---

[2] In *Poulos*, the Seventh Circuit noted that a "variety of courts" had found a public policy against unnecessary public disclosure of tax returns. 959 F.2d at 74–75. The Seventh Circuit declined to express an opinion on that point in *Poulos*. *Id.* at 75 ("We express no opinion at this time on the validity or proper formulation of this policy against disclosure.").

of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge **must** review the magistrate judge's report and recommendations *de novo*" (emphasis added)). Accordingly, "the magistrate's findings are not protected by the clearly erroneous doctrine." Fed. R. Civ. P. 72 advisory committee's note to 1983 promulgation. The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) (implementing statutory requirements and reciting similar language for magistrate's recommended disposition of "dispositive motions and prisoner petitions").[3]

**OBJECTIONS & ARGUMENT**

1. **Objection 1: The Report & Recommendation's analysis under the Rules of Professional Conduct is not supported by the facts.**

While Mr. Sture acknowledges his mistakes, Mr. Sture respectfully submits that he acted out of haste and did not act with an intent to deceive, nor did he act unethically. Nevertheless, the Report found violations of Rules 3.3, 3.1, and 1.1 of the Indiana Rules of Professional Conduct. These findings are objected to for the reasons stated below.

---

[3] A r*equest* for sanctions is a dispositive matter. *Retired Chicago Police,* 76 F.3d at 868 (citing *Alpern v. Lieb,* 38 F.3d 933 (7th Cir. 1994)). There appears to be no distinction under 28 U.S.C. § 636(b) or Rule 72 between *requests* for sanctions made by a party or its counsel and, as here, a *sua sponte* inquiry into sanctions.

a. **Objection to Finding that Mr. Sture Violated Rule 3.3**

The Report states the following regarding Rule 3.3:

> "A lawyer shall not knowingly: . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Ind. R. of Prof. Conduct 3.3(a)(1). It is undisputed that Mr. Sture made false statements of law to the court when he relied on two cases that do not exist. Moreover, Mr. Sture did so "knowingly"—he knowingly failed to fulfill his duty to review the brief he filed and verify that the law he presented was good law. As such, the Undersigned believes that discipline for violation of Indiana Rule of Professional Conduct 3.3 is appropriate as well."

[Report (Dkt. 71 at 9)]

"Knowingly" is a defined term under the Indiana Rules of Professional Conduct. As Rule 1.0(f) confirms, it "denotes actual knowledge of the fact in question." Therefore, for a violation of Rule 3.3 to have occurred, Mr. Sture had to have *actual knowledge* that he was submitting a false statement of law. The Report does not (and cannot) support such a finding. In fact, the Report implicitly concluded that Mr. Sture did not intend to deceive the Court or intentionally falsify caselaw by noting "[t]he fact that Mr. Sture did not file the brief with the intention of deceiving the court does not excuse his failure to check the citations therein." [Report (Dkt. 71 at 6 (citing *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987)))]

Furthermore, as shown above, the statement of law in Statement #1 and Statement #2 above are accurate, but the citations are incorrect because they do not exist. Mr. Sture believed the statements were valid statements of law when he filed the brief.

10

Accordingly, Mr. Sture did not knowingly make a false statement of law and objects to any finding that he did.

### b. Objection to Finding that Mr. Sture Violated Rule 3.1

The Report states the following regarding Rule 3.1:

> "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." Ind. R. of Prof. Conduct 3.1. This Rule mirrors the requirements of Rule 11(b)(2), and likewise proscribes presenting unfounded legal bases. There is no merit in relying on non-existent cases, so Mr. Sture's conduct clearly disregarded this Rule."

[Report (Dkt. 71 at 9)]

Once again, while Mr. Sture made mistakes in the citations in Statement #1 and Statement #2, he did not misstate the law. He therefore had a good faith "basis in law" for his statements to the Court and did not violate Rule 3.1 of the Indiana Rules of Professional Conduct. While misstating a case citation may be grounds for a Rule 11 sanction, under these circumstances, there is no basis to find a violation of Rule 3.1 of the Indiana Rules of Professional Conduct. Therefore, Mr. Sture objects to any finding that he violated this Rule.

### c. Objection to Finding that Mr. Sture Violated Rule 1.1

The Report states the following regarding Rule 1.1:

> "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." Ind. R. of Prof. Conduct 1.1. It is clear that Mr. Sture failed to provide competent

11

representation when he submitted fabricated legal citations to the court in a brief that he did not draft and had not adequately reviewed. These actions flouted the requisite legal knowledge, skill, preparation, and especially thoroughness reasonably necessary for Mr. Sture's representation of his client."

[Report (Dkt. 71 at 8–9)]

Once again, Mr. Sture apologizes for his error in not correcting the citations in the response. Mr. Sture mistakenly relied on a formerly licensed Indiana lawyer who surely knew the importance of accurate case citations. The cases cited appear to be consistent with current law and Mr. Sture did not catch the errors.

Competence "is a function of reasonableness." Ronald D. Rotunda & John S. Dzienkowski, *Legal Ethics: The Lawyer's Deskbook on Professional Responsibility* § 1.1-1(c), Westlaw (database updated Dec. 2024). The failure to catch an error is not a *per se* violation of the rules, let alone a basis for discipline. "Reasonable lawyers can make reasonable mistakes. The lawyer is not competent when the mistake is not reasonable, and she is competent if the mistake is reasonable." *Id.* at § 1.1-1.

Mr. Sture respects the Court and the need for accuracy in pleadings, but respectfully disagrees that he "flouted" his ethical obligations. He was working under a time crunch, at the eleventh hour, and was not able to give the preparation and thoroughness he would normally give to the filing of a brief. Under those circumstances, Mr. Sture gave the preparation and thoroughness available to him. He

12

acted reasonably and therefore, did not violate Rule 1.1. Accordingly, Mr. Sture

respectfully objects to any finding that he violated Rule 1.1.

2. **Objection 2: The recommended sanction should be modified or rejected because a disciplinary referral has already been made and mitigating circumstances exist.**

Mr. Sture has practiced for more than 20 years and has never been disciplined. As

the Seventh Circuit has recognized, sanctions "should not be lightly imposed" because

of "the impact sanctions may have on a party or an attorney's career and personal well-

being." *Brown v. Fed'n of State Med. Bds. of the U.S.*, 830 F.2d 1429, 1437 (7th Cir. 1987)

(citing *Robinson v. Nat'l Cash Reg. Co.*, 808 F.2d 1119, 1131 (5th Cir. 1987)), *overruled on*

*other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989).

Consistent with that recognition, Rule 11 requires that sanctions "**must** be limited to

what suffices to deter repetition of the conduct or comparable conduct by others

similarly situated." Fed. R. Civ. P. 11(c)(4); *see also Brown*, 830 F.2d at 1437 ("the least

severe sanction adequate to serve the purpose should be imposed") (cleaned up)).

A disciplinary referral has already been made. [Dkt. 73; MC Dkt. 2] And a separate,

miscellaneous proceeding has already been initiated, apparently because of that

referral. *In re Tae Sture*, No. 1:25-mc-00047-JRS-MG. Rule 11(c)(4) permits sanctions in

the form of a "nonmonetary directive." The disciplinary referral is a sufficient deterrent

for both Mr. Sture and similarly situated counsel because it adequately satisfies what

this Court and the United States Supreme Court has recognized as the "central purpose

13

of Rule 11": "to deter baseless filings in district court." *HNA Sweden Hosp. Mgmt. AB v. Equities First Holdings, LLC,* No. 1:19-cv-02452-JRS-MPB, 2020 WL 4720029, at *2 (S.D. Ind. July 9, 2020) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)), *reconsidered and modified on other grounds by* 2020 WL 13574983 (S.D. Ind. Dec. 8, 2020). The Report and Recommendation does not analyze why an additional, monetary sanction of $7,500 (presumably payable to the Court as a penalty) is warranted.

No greater sanction is necessary for deterrence. The Report and Recommendation notes that one purpose of sanctions is deterrence [Dkt. 71 at 7], cites in a footnote "at least eleven cases noting fictitious citations" from around the country [*id.* at 7 n.5], and concludes that "it is clear that the imposition of modest sanctions has failed to act as a deterrent" [*id.* at 7]. None of the cases cited in the footnote is from this District, and there is no reason why those cases would have deterred a solo practitioner with decades of experience who has admitted to not verifying citations in one brief while working under a tight deadline amidst the pressures of competing demands in his busy practice. There is likewise no reason—in the Report and Recommendation or elsewhere—why a sanction of $7,500 would operate as more of a deterrent than any of the lower sanctions imposed by this Court or any other in the other decisions cited, particularly in this circumstance where sanctions were imposed *sua sponte* and not at the request of an opposing party. Indeed, monetary sanctions were not imposed in any of the three cases cited in the Report as involving conduct by attorneys. *See Chenco Eng'g & Consulting*

14

*GmbH v. Do-Fluoride New Materials Co. Ltd.*, No. 2:24-cv-00632-AKB, 2025 WL 2430556, at

\*5 (D. Idaho Aug. 22, 2025) (admonishing counsel to act according to rules); *Mavy v.*

*Comm'r of SSA*, No. CV-25-00689-PHX-KML (ASB), 2025 WL 2355222 (D. Ariz. Aug. 14,

2025) (no monetary sanction even where "majority" of cases cited contained errors);

*Hall v. Acad. Charter Sch.*, No. 2:24-cv-08630-JMW, 2025 WL 2256653 (E.D.N.Y. Aug. 7,

2025) (admonishing counsel and declining to impose monetary sanctions).

Whatever the purpose of the sanction imposed, the recommended amount is greater

than necessary to achieve it. The recommended amount of $7,500 is higher than the

sanction amount in *each* of the four cases cited in the Report and Recommendation for

the imposition of monetary sanctions. *See* Dkt. 71 at 7 (collecting cases from "the past

few years" imposing sanctions between $2,000 and $6,000). Indeed, the recommended

amount is higher than the amount this Court has imposed for "*three separate occasions*"

of incorrect citations. *Mid. Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac*

*LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 1511211 (S.D. Ind. May 28, 2025)

(considering "collateral consequences" to attorney, including referral to Disciplinary

Commission, and reducing recommended sanction of $15,000 to $6,000) (emphasis

added). It is also higher than the presumptive sanction imposed by the Seventh Circuit

in 2020 for initiating an entirely frivolous tax appeal. *Veal-Hill v. Comm'r of Internal*

*Revenue*, 976 F.3d 775 (7th Cir. 2020) (per curiam). This is not a case where an entire

filing, let alone an entire proceeding is frivolous or otherwise problematic under Rule

15

11. In light of incorrect citations in a single filing, a sanction of $2,000 or less would be sufficient.

## CONCLUSION

For the foregoing reasons, the Court should modify the Report and Recommendation, impose no discipline, and reduce the amount of the sanction to $2,000 or less.

Respectfully submitted,

/s/ *James J. Bell*
James J. Bell (21548-49)

/s/ *Riley H. Floyd*
Riley H. Floyd (34014-29)

HOOVER HULL TURNER LLP
111 Monument Circle, Suite 4400
Indianapolis, IN 46204
Tel: 317-822-4400
jbell@hooverhullturner.com
rfloyd@hooverhullturner.com

*Counsel for Tae Sture*

16