UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| YVONNE L DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:24-cv-01918-JRO-MJD |
| | ) | |
| MARION COUNTY SUPERIOR COURT | ) | |
| JUVENILE DETENTION CENTER, | ) | |
| PAIGE BOVA KERVAN, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| TAE STURE, | ) | |
| | ) | |
| Miscellaneous. | ) | |

**ORDER ON REPORT AND RECOMMENDATION**

This matter is before the Court on a Report and Recommendation ("R&R") from Magistrate Judge Mark J. Dinsmore. Dkt. 71. The Magistrate Judge has recommended that the Undersigned personally sanction Plaintiff's counsel, Tae Sture, for including two non-existent legal citations in a brief responding to a motion to compel. The legal citations were hallucinations generated by an artificial intelligence ("AI") research tool.

The Magistrate Judge found Mr. Sture's conduct violated the Indiana Rules of Professional Conduct as well as Federal Rule of Civil Procedure 11(b). For the Rule 11 violation, the Magistrate Judge recommends that Mr. Sture be personally sanctioned in the amount of $7,500.00. Mr. Sture has objected to

the R&R's findings regarding violation of the Indiana rules as well as the amount of the recommended monetary sanction. *See* Fed. R. Civ. P. 72(b).

As further explained below, the Court respectfully **REJECTS** the Magistrate Judge's R&R insofar as it concludes Mr. Sture violated the Indiana Rules of Professional Conduct. Those issues have been referred to the Indiana Disciplinary Commission by the Chief Judge. Further, the Court **ADOPTS** the Magistrate Judge's Rule 11 analysis but **MODIFIES** the recommended monetary sanction, reducing it to $2,000.00 to reflect mitigating circumstances in this case and recent Seventh Circuit guidance.

## I. BACKGROUND

On July 31, 2025, Mr. Sture admittedly filed a brief in response to a motion to compel in this case that included two nonexistent legal citations. Dkt. 86 at 5. The first citation and quotation at issue read:

> "It is the burden of the party seeking discovery to show that the information sought is relevant to the claims or defenses in the case." *Perry v. City of Indianapolis*, No. 1:18-cv-02173-JRS-DLP, 2019 WL 2088435, at 2 (S.D. Ind. May 13, 2019).

Dkt. 71 at 1. The false citation is "a rather bizarre amalgamation of several cases"—none relating to discovery—from the Southern District of Indiana and the New York Superior Court. *Id.*

The second citation and quotation were as follows:

> Only when wage income information cannot be obtained through less intrusive means do income tax returns come into play. *See Berg v. Symons*, 393 F. Supp. 2d 1215 (D. Minn. 2005) ("Tax returns are not discoverable absent compelling need.")

*Id.* at 1–2.  This citation too is nonexistent.  *Id.*  It appears similar to a case that does exist—*Berg v. Symons*, 393 F. Supp. 2d 525, 546 (S.D. Tex. 2005)—but that case does not concern tax returns.  *Id.*

The Magistrate Judge, upon discovering the fictitious citations, ordered Mr. Sture to appear and show cause why he should not be sanctioned for violating Federal Rule of Civil Procedure 11(b) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that the "legal contentions are warranted by existing law . . . .").  *Id.* at 2.  At the show cause hearing, Mr. Sture accepted responsibility for the errors in his response brief.  *Id.*  He explained that he asked his paralegal to draft the brief given his busy schedule and the Magistrate Judge's 3-day deadline to file it.  *Id.*  He further explained that he did not have enough time to carefully review the paralegal's work before filing at the "eleventh hour."  *Id.* at 2–3.  Mr. Sture also represented that "the paralegal did not use generative AI to aid in the drafting of the brief; rather, she told [him] that she used a legal research product called Fastcase."  *Id.* at 3.

Following the show cause hearing, on September 2, 2025, the Magistrate Judge issued an R&R that found Mr. Sture had violated three provisions of the Indiana Rules of Professional Conduct and Federal Rule of Civil Procedure 11(b).  *See* Dkt. 71.  The Magistrate Judge recommended that Mr. Sture be personally sanctioned in the amount of $7,500.00 for the Rule 11 violation.  *Id.* at 8.  In concluding the R&R, the Magistrate Judge also referred the matter of Mr. Sture's

3

misconduct to Chief Judge James R. Sweeney II pursuant to Local Rule of Disciplinary Enforcement 2(a)(1) for consideration of further discipline. *Id.* at 10. The Chief Judge, in turn, referred the matter to the Indiana Attorney Disciplinary Commission for investigation and prosecution. *In re Sture*, No. 1:25-mc-00047-JRS-MG, dkt. 2 (S.D. Ind. Sept. 8, 2025).

Mr. Sture timely filed an objection to the R&R on September 22, 2025. Dkt. 86.

## II. DISCUSSION

"The Federal Magistrate Act grants a district court judge the authority to refer a magistrate judge to conduct hearings and submit proposed findings of facts and recommendations." *Jackson v. United States*, 859 F.3d 495, 498 (7th Cir. 2017) (citing 28 U.S.C. § 636(b)(1)(B)).  If any party objects to the proposed findings and recommendations, the "district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C).

Mr. Sture has lodged two objections to the R&R.  First, he argues that the R&R's "analysis under the [Indiana] Rules of Professional Conduct is not supported by the facts." Dkt. 86 at 9.  The Court takes no position on this objection.   These issues have been referred to the Indiana Disciplinary Commission.

Second, he argues that the monetary sanction should be modified or rejected due to the state disciplinary referral and other mitigating circumstances. *Id.* at 13.  While the Court finds mitigating circumstances—and recent Seventh

4

Circuit decisions—warrant lower monetary sanctions, the Court finds that monetary sanctions are warranted to deter the use of hallucinated case citations generated by AI in legal briefing.

### A.    Objection 1: Violation of Indiana Rules of Professional Conduct

The Magistrate Judge found that Mr. Sture's conduct in this matter violated three provisions of the Indiana Rules of Professional Conduct for attorneys. Specifically, the Magistrate Judge determined the facts warranted discipline for violation of Rule 1.1 (competence), Rule 3.1 (meritorious claims and contentions), and Rule 3.3 (candor toward the tribunal). Dkt. 71 at 8–9. Mr. Sture takes issue with each of these findings.

The Court need not resolve these disciplinary questions. After referring the matter of Mr. Sture's alleged misconduct to the Indiana Disciplinary Commission, the Chief Judge explained that his referral "did not find that Mr. Sture violated the Indiana Rules of Professional Conduct" but instead "defer[red] to the Indiana Disciplinary Commission on the question of whether Mr. Sture's conduct violated [the state rules]." Dkt. 94 at 2. Following the Chief Judge's lead, the Undersigned will also defer to the state disciplinary process.

Accordingly, the Court **SUSTAINS** Mr. Sture's first objection and **REJECTS** the Magistrate Judge's findings regarding violation of the Indiana Rules of Professional Conduct, consistent with the Chief Judge's prior order. *See* Dkt. 94. The Court expresses no opinion on these issues.

**B.      Objection 2: Rule 11 Sanctions**

By filing a brief or any other paper in federal court, an attorney represents "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that all "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2). Rule 11 authorizes "an appropriate sanction on any attorney . . . that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

The Magistrate Judge correctly recited and applied the Rule 11 standard in determining that Mr. Sture failed to "make the requisite reasonable inquiry" into the existence of the legal citations at issue—let alone their accuracy—before filing his brief. Dkt. 71 at 6. For Rule 11 purposes, it did not matter "[w]hether or not AI was the genesis of the non-existent citations." *Id.* Mr. Sture does not disagree with that analysis. He only objects to the recommended $7,500.00 sanction for violating his Rule 11 obligations.

In fashioning an appropriate sanction, the Court is mindful of the "basic principle underlying Rule 11" that "in choosing a sanction, the least severe sanction that is adequate to serve the purpose should be imposed." *Brown v. Fed'n of State Med. Bds. of the U.S.*, 830 F.2d 1429, 1438 (7th Cir. 1987) (cleaned up). One "important purpose" of Rule 11 sanctions is deterrence. *Id.*; *see also* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.").

The Court adopts the Magistrate Judge's Rule 11 analysis and its decision to impose a monetary sanction as a deterrence. But the Court reduces the monetary sanction to reflect mitigating circumstances and recent guidance from the Seventh Circuit.

**1.      The Problem of Artificial Intelligence in Legal Briefs**

Mr. Sture argues that the Magistrate Judge's Report and Recommendation did not sufficiently justify why $7,500.00 in monetary sanctions are necessary to deter him and similarly situated counsel from including hallucinated case citations in future filings before this Court. Dkt. 86 at 13–15. He says a disciplinary referral is sufficient and that "[n]o greater sanction is necessary for deterrence." *Id.* at 86.

The Court disagrees. Filing documents with fake citations generated by AI reflects an unprecedented form of personal detachment from attorney work product and this Court's professional licensing standards. Monetary sanctions are necessary to deter this detachment, which only threatens to increase as AI adoption grows.

The Magistrate Judge's Report and Recommendation is only the latest entry in the judiciary's ongoing struggle with the growing adoption of generative AI into the legal writing process. As the Seventh Circuit recently stated,

> submission of a brief with numerous fictitious citations and quotations is a serious dereliction of counsel's duty to serve as an officer of the court. "Citing nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court. It does not matter if [generative AI] told you so."

7

*D'Ambrosio v. Meta Platforms Inc.,* --- F.4th ---, 2026 WL 1361951, at *8 (7th Cir. May 15, 2026) (quoting *Prososki v. Regan,* 32 N.W.3d 593, 607 (2026) (alteration in original) (ordering counsel to show cause why the Court should not impose sanctions for hallucinated case citations).  The inclusion of fictitious citations in court papers—whether intentional or not—"result[s] in confusion and time wasted."  *Dec v. Mullin,* 171 F.4th 940, 948 (7th Cir. 2026).  The Court "must track down the false citations, seek explanations from counsel, and evaluate the magnitude of the violations."  *Id.*  All this "generates unnecessary work on a case within a case" and frustrates the administration of justice.  *Id.*; *cf. Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 398 (1990) ("The filing of complaints, papers, or other motions without taking the necessary care in their preparation is a separate abuse of the judicial system, subject to separate sanction.").

This phenomenon of hallucinated case citations should be well known to all attorneys.  The duty of competence includes the duty to know "the benefits and risks associated with the technology relevant to the lawyer's practice."  Ind. Professional Conduct Rule 1.1, cmt. [6].  Given this duty, Mr. Sture should have known that his firm's legal research tool, Fastcase, might generate a hallucinated case citation from time to time.  A heavy caseload and compressed schedule do not excuse his obligation to implement a quality control process at his firm that would prevent fake citations.  Most attorneys suffer from too little time.  This is not the problem.  The problem is not being ready for the inevitable time crunch.

But this issue of fake citations generated by AI is about more than inefficiency and lack of preparation.  After all, the Magistrate Judge noted

8

"multiple other mistakes in the citations contained in Mr. Sture's brief . . . [which] could be attributed to simple sloppiness in drafting, as opposed to a failure to comply with the basic obligations of legal counsel, [and thus] are not the subject of this sanctions recommendation." Dkt. 71 at 2 n.1 (citing Dkt. 67 at 2–3). These other mistakes also caused unnecessary delay for the reviewing judge and reflected a lack of preparation and care by Mr. Sture. Yet, as with the Magistrate Judge here, hallucinated case citations draw courts' formal attention to a higher degree than mere drafting errors do. The Court has attempted to identify Rule 11 orders sanctioning attorneys merely for sloppy legal citations and cannot find many. But many more courts have sanctioned attorneys for including (or failing to remove) hallucinated cases; indeed, the pile of Rule 11 orders sanctioning counsel for hallucinated case citations is growing by the day, as the citations in Mr. Sture's objection reflect. *E.g.*, *Dec*, 171 F.4th 940 (imposing admonition); *D'Ambrosio*, 2026 WL 1361951 (issuing order to show cause); *see also, e.g.*, *Obi v. Cook Cnty., Illinois*, No. 25 C 3096, 2026 WL 1001481 (N.D. Ill. Apr. 9, 2026) (ordering monetary sanctions); *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 1511211, at *1 (S.D. Ind. May 28, 2025) (same). Something else is afoot.

Unlike mere sloppiness, reliance on fictitious citations highlights a concerning symptom of the legal profession's growing adoption of AI: a disembodied practice. In other words, using AI encourages personal detachment from the attorney's work product and relationship with the Court.

The legal profession is personal.  Every lawyer is personally licensed, personally appears in court, and personally signs pleadings on behalf of their client.  We also assume that lawyers have personally read every case they reference and have incorporated that case's holding into their corpus of expertise.  But when the practice of law becomes increasingly mediated by ever-advancing technology—which, frankly, most of us do not understand—something essential to the profession is lost.

Bar and court admission requirements also reflect the personal nature of the legal profession.  "Only members of the court's bar may represent parties before the court," our local rules say.  Local Rule 83-5(a)(1).  There's a vetting process.  Coupled with the general prohibition on *ex parte* communications, the admissions process creates a semi-sacred space between the bar and the bench.  The public must trust this space and know that the facts and arguments considered by the Court truly belong to the parties.  When judges read legal briefs, they enter that semi-sacred conversation with confidence that the arguments they are considering are arguments fairly and honestly presented by licensed counsel or *pro se* litigants—people who are members of the Court's community and have a personal interest in the conduct of the litigation and the administration of justice in their affairs.

Hallucinated citations rudely interrupt this conversation.  It's jarring and disorienting.  Decorum and trust are breached.  At this point, the Court cannot immediately discern if it is receiving argument from the person who signed the

10

brief or from an artificial intelligence the Court has never met and has not licensed to appear before it—a voice that does not belong to a person at all.[1]

In sum, fake citations represent more than sloppy lawyering and cost more than the Court's time. They reflect a tendency toward professional detachment. This in turn jeopardizes the conventions of our profession, as well as the public's trust that the arguments and rationale considered by the Court are the facts and reasons of the parties, not artificial interlopers. Monetary sanctions are appropriate to deter similar detachment in others and encourage a renewed commitment to the duties of candor and diligence in an age of advancing technology.

### 2.    Mitigating Circumstances

Mr. Sture argues that there are mitigating circumstances in his case that warrant lesser sanctions than the Magistrate Judge recommended. He asks for "a sanction of $2,000 or less." Dkt. 86 at 16.

---

[1] The Seventh Circuit expresses overall optimism about the adoption of AI by the legal profession, particularly for *pro se* litigants: "AI presents great promise for enhancing access to justice for those without the resources to retain counsel or to represent themselves effectively." *Jones v. Kankakee Cnty. Sheriff's Dep't*, 164 F.4th 967, 970 (7th Cir. 2026). The hope is that "litigants and courts alike will arrive over time at sound and workable practices, policies, and rules that account for these realities and the nuanced consideration they deserve." *Id.* One step toward sound and workable practices for generative AI is the full disclosure of its use. All parties to a conversation, even artificial ones, should be properly introduced. Civility and professionalism warrant nothing less. Working in the light of transparency encourages both the awareness of AI's novelty and personal accountability for its use. Accordingly, this Court mandates that all counsel and *pro se* litigants announce their use of generative AI in any legal filing. *Practices and Procedures before Judge Justin R. Olson*, II.K, Disclosure and Use of Artificial Intelligence (AI). This policy was not in effect at the time Mr. Sture filed his brief. It is possible that it may have prevented his mistakes by drawing his attention to the capabilities of his firm's software and how it was used by his staff.

First, he stresses the compressed three-day timeframe for preparing his brief as a solo practitioner.  Dkt. 86 at 2–5.  The Supreme Court has noted in considering Rule 11 sanctions that reasonableness is the touchstone.  For example, "[a]n inquiry that is unreasonable when an attorney has months to prepare a complaint may be reasonable when he has only a few days before the statute of limitations runs."  *Cooter & Gell*, 496 U.S. at 401–02.  A similar dynamic is at play here.  Some mitigation is warranted given Mr. Sture's limited time and resources to prepare and review his brief.

Second, beyond admitting to and apologizing for his conduct, Mr. Sture emphasizes that he has practiced law for more than 20 years without being disciplined.  Dkt. 86 at 1, 13.  He also stresses that the "public nature" of the R&R and his referral to the Indiana Disciplinary Commission are a sufficient deterrent for both himself and similarly situated counsel.  Dkt. 86 at 2, 13; *see also id.* at 15 (citing *Mid. Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-cv-00326-JPH-MJD, 2025 WL 1511211, at *1 (S.D. Ind. May 28, 2025) (considering "collateral consequences" to attorney in similar context, including referral to state disciplinary commission)).  In addition, the Court appreciates that Mr. Sture has not engaged in a pattern of AI-related misconduct but included only two fictitious citations in a single brief.  *Cf. Mid. Cent. Operating Eng'rs*, 2025 WL 1511211, at *2 (concluding sanction of $6,000.00 was appropriate where attorney "filed briefs containing non-existent AI-generated legal citations on three separate occasions").  These are all mitigating circumstances.  Moreover, the Court is persuaded that Mr. Sture had

12

no intention to deceive, as the nonexistent case citations were offered to support correct and uncontroversial statements of law.  *See* Dkt. 86 at 6–8.

The present circumstances are similar to those recently considered at the Seventh Circuit in *Dec v. Mullin,* 171 F.4th 940 (7th Cir. 2026).  There, counsel for the appellant included two nonexistent cases and an imaginary quotation in her opening brief.  *Id.* at 946.  After providing an opportunity to show cause, the Seventh Circuit admonished the attorney but declined to impose any further sanctions.  The panel noted the attorney's "errors were few and mainly supported the undisputed standard of review" and was persuaded by her "acceptance of responsibility and sincere apology that the[] false citations were not made knowingly or intentionally."  *Id.* at 948.

That the Seventh Circuit declined to impose any monetary sanctions in *Dec v. Mullin* suggests that this Court should likewise remain modest in its sanction.  Accordingly, having considered the need "to deter repetition of [Mr. Sture's] conduct or comparable conduct by others similarly situated" along with the mitigating circumstances discussed above, Fed. R. Civ. P. 11(c)(4), the Court **SUSTAINS in part** the second objection and **MODIFIES** the Magistrate Judge's recommended monetary sanction, reducing it to $2,000.00.

### III. CONCLUSION

For the foregoing reasons, the Court **REJECTS** the Magistrate Judge's R&R, dkt. [71], insofar as it concludes Mr. Sture violated the Indiana Rules of Professional Conduct, **ADOPTS** the R&R's Rule 11 analysis, but **MODIFIES** and reduces its recommended monetary sanction.   Mr. Sture is **personally**

13

**sanctioned $2,000.00** and shall pay that amount to the Clerk of Court within thirty (30) days of service of this Order.

**SO ORDERED.**

Date:  5/20/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

14